THE BANK OF ORLEANS *vs.* JOHN CURTIS & others.

A bank at Albion, in the State of New York, discounted a bill of exchange, deducting a little less than legal interest for the time it had to run, and gave the holder, at his request and for his accommodation, a draft payable in its own bills, on a bank at Albany, where by law it was required to redeem them at a discount not exceeding one half of one per cent.; and the holder received those bills at par: The bank at Albany was the agent of the bank at Albion for the redemption of its bills, and paid the holder of the discounted bill in the bills of the bank at Albion, which then passed current at par; and that bank paid to the bank at Albany the amount of said draft in full. *Held*, that these facts did not prove that the bill was discounted on a usurious consideration or agreement.

WILDE, J.   This action is assumpsit against the defendants as acceptors of a bill of exchange for $3000, drawn by John Thomas, payable to his own order, and by him indorsed .o the plaintiffs, a bank at Albion in the State of New York. The defence is, that the bill was discounted at a rate of interest exceeding seven per cent., which is the rate allowed by the law of New York, and that, by the *lex loci contractus*, the contract was usurious and void.

The material facts in the case are, that the bill was discounted at the request of the said Thomas, and that he was paid, by the cashier of the plaintiff bank, the amount of the bill, deducting a few dollars less than seven per cent. (the lawful interest,) for the time it had to run.   This payment was made by a check or order on the New York State Bank in Albany, payable in the bills of the Bank of Orleans, and was received by Thomas at par.   At that time, the Bank of Orleans was required by law to redeem its notes in Albany, and at a discount not exceeding one half of one per cent., and the said New York State Bank was the plaintiffs' agent to make such redemption.   On these facts, the defendants' counsel contend that the transaction was usurious. But we are of opinion, considering all the facts in the case, that there is no proof that there was taken or reserved, by the contract, directly or indirectly, more than legal interest, in contravention of the New York law against usury.   " To

constitute usury, within the prohibitions of the law, there must be an intention knowingly to contract for or take usurious interest; for if neither party intend it, but act *bona fide* and innocently, the law will not infer a corrupt agreement." This rule of construction of the law against usury was laid down in the case of *Bank of U. States* v. *Waggener*, 9 Pet. 399, and the case was decided on that principle. We are of opinion that this rule of construction is well founded, and well established by the authorities. This has been the uniform construction of the usury laws in England, and was acted upon, as a settled rule of law, in the cases of *Portland Bank* v. *Storer*, 7 Mass. 433, and *Northampton Bank* v. *Allen*, 10 Mass. 284.

The case of the *Bank of U. States* v. *Waggener* is much stronger against the plaintiffs than the case under consideration. In that case, a loan had been made in the notes of the Bank of Kentucky, at par, when they were at a depreciation of between 33 and 40 per cent. Yet as the Bank of Kentucky was solvent, and compellable by law to pay the full amount of its notes, which they did afterwards in fact pay in full, the court held that the transaction was not usurious, unless it should be found by a jury that there were an intended loan of money and a reservation of illegal interest. In the present case there is no proof that the notes of the Bank of Orleans were depreciated, and it must be presumed that they passed current at par; for if otherwise, it would have been proved. There is no proof that Thomas did not pass all the bills he received from the plaintiffs, at par; if he did not, he would have so testified. The cashier of the plaintiffs gave an order upon the New York State Bank for the amount of the bill discounted, deducting no more than legal interest, at the special request of Thomas, and for his accommodation. This order was charged to the Bank of Orleans, and has been fully paid. It is clear, therefore, that Thomas has never paid, nor have the plaintiffs received, any illegal interest; nor is there any reason to believe that a usurious contract was ever made or contemplated by the parties. The Bank of Orleans

was required by law to redeem its notes in Albany, and at a discount not exceeding one half of one per cent. But this has no tendency to prove that its bills were depreciated, or did not pass current at par, in all business transactions. This case, therefore, is in no respect like the cases cited by the defendants' counsel, (1 Yerg. 243, 444; Meigs, 585; 1 J. J Marsh. 49; 6 Monr. 376; 7 Monr. 336, 354, 424; 9 Pet. 391;) wherein it has been decided, that a loan of paper money greatly depreciated, to be repaid in sound funds, is usurious, or that it should be left to the jury to decide whether, in such lending, there was not a shift or device, which was designed to, and did, cover usury. In the present case, it is not proved that the bills of the Bank of Orleans were ever greatly depreciated, or depreciated at all; nor is there any evidence upon which a jury would be warranted in finding that the bill sued was discounted upon a usurious consideration or agreement. We are therefore clearly of opinion, upon authority and principle, that the plaintiffs are entitled to judgment

*H. Morris,* for the plaintiffs.

*Ashmun,* for the defendants.