Petring v. Chrisler.

PETRING, *Appellant*, v. CHRISLER ; HERR DRY GOODS Co., *Interpleader*.

1. **Mortgage of Stock of Goods;** POSSESSION : ATTACHMENT. Where the mortgagee of a stock of merchandise, in good faith, takes actual possession of the same, prior to the levy of an attachment by another creditor of the mortgageor, for the purpose of securing a debt due him, and continues to hold the actual possession up to the time of the attachment levy, he will be protected and will hold the property as against the attaching creditor, and it is immaterial that the mortgage contains stipulations which render it void, except as between the parties.

2. ———— : PROPERTY NOT IN ESSE. A provision in the mortgage, conveying property not *in esse* at the date of its execution, while inoperative as to pass the title to such property, does not render the mortgage fraudulent *per se*, or absolutely void without regard to the intention of the parties.

3. ———— : EXTRINSIC EVIDENCE. Whether the mortgage is fraudulent in fact as to other creditors, by reason of the conduct of the mortgagees in permitting or encouraging the mortgageor, after breach of the conditions of the mortgage, to continue to sell without requiring the proceeds of the sale s to be applied on the mortgage debt, is a question to be determined by extrinsic evidence.

4. **Estoppel.** The *onus* is on a party setting up an estoppel to make out the facts on which it rests.

5. ———— : ATTACHMENT SUIT : INTERPLEADER : DELIVERY BOND. In the absence of evidence to show that an attaching creditor was deceived or induced in some way, injurious or prejudicial to him, to alter his position with reference to the property of his debtor, in consequence of the execution of a delivery bond to the sheriff by

90 649
38a 631

90 619
107 380
90 649
51a 436

90 649
120 218
55a 101

90 649
128 173
61a 566

90 649
63a 219
63a 330

90 649
65a 133

90 649
f77a 290

90 649
95a 5125
95a 3659

an interpleader in the attachment suit, the latter will not be estopped, by reason of having given said bond, from asserting his title to the property on the trial of the right of property between himself and the attaching creditor.

*Appeal from Lawrence Circuit Court.*— HON. M. G. McGREGOR, Judge.

AFFIRMED.

*Goode & Cravens* for appellant.

(1) The mortgage was fraudulent *per se*, because it purported to convey property thereafter to be acquired — property not then owned by the mortgageors and perhaps not in existence. *Phelps v. Murray*, 4 Cent. Law Jour. 583. The court so held, but also held that the defect was cured by a subsequent delivery of possession. We concede that technical fraud, apparent on the face of an instrument, is cured by a delivery of possession. This was decided in *Nash v. Norment*, 5 Mo. App. 545. But in this case there was no subsequent delivery of possession. (2) The court gave the above doctrine too wide a scope. It held that the change of possession not only cured technical fraud, but fraud in fact. The second declaration given at plaintiff's request, holds that if the mortgagee permitted the mortgageors to sell the goods in the usual course of trade without requiring them to pay over the proceeds of the sale on the mortgage debt, the transaction was fraudulent in fact. The evidence is undisputed that the Herr Dry Goods Company not only permitted the Chrislers to dispose of the stock without applying the proceeds to the discharge of the mortgage debt, but even encouraged them to do so. This was fraud in fact as to other creditors, and a change of possession does not relieve from the consequences of it. If a power of disposing of the property is left with the mortgageor by the terms of the instrument, without

requiring that he account for the proceeds, it is fraudulent *per se*, and the court will so declare it as a matter of law. But an understanding to the same effect, but not expressed in the instrument, may be proven *aliunde* and this makes the transaction as vicious as the other mode. This, however, is fraud in fact. The distinction is plainly stated in *State to use v. Tasker*, 31 Mo. 445 ; *State to use v. D' Oench*, 31 Mo. 45 ; *Reed v. Pelletier*, 28 Mo. 170 ; *State v. Jacob*, 2 Mo. App. 183 ; *Metzner v. Graham*, 57 Mo. 404 ; Herman on Chat. Mort. 235. (3) The transactions between the Chrislers and Herr converted the mortgage into a conveyance of the property to the use of the former. *Lodge v. Samuels*, 50 Mo. 204 ; *Armstrong v. Tuttle*, 34 Mo. 432 ; *Brooks v. Wilmer*, 20 Mo. 500 ; *Martin v. Maddox*, 24 Mo. 575 ; *Martin v. Rice*, 24 Mo. 581 ; *Reed v. Pelletier*, 28 Mo. 173. (4) The mortgage debt must be held to have been satisfied as to other creditors at the time possession was taken by the interpleader. The deed required that the proceeds should be accounted for and applied to the debt, and more than enough goods were sold to pay it. Jones on Chat. Mort. sec. 640 ; *Mastin v. Cummings*, 24 Wis. 623 ; *Conkling v. Shelly*, 28 N. Y. 360. (5) The interpleader, having given a delivery bond, is estopped from claiming the goods. Bigelow on Estoppel, 436 ; *Picard v. Sears*, 6 Ad. and E. 469 ; *Deezell v. Odell*, 3 Hill, 215 ; *Dresbach v. Minnis*, 45 Cal. 223 ; *Gaff v. Harding*, 66 Ill. 61 ; *Dewey v. Field*, 4 Met. 381 ; *Waterman v. Frank*, 21 Mo. 108 ; *Hashaw v. Guillet*, 53 Mo. 208 ; *Jones v. Jones*, 38 Mo. 429 ; 3 Mo. App. 579.

*Massey & McAffee* for respondent.

(1) The provision in the chattel mortgage conveying or intending to convey '' all goods and property that may be placed in the store hereafter, at Chesapeake, by purchase or otherwise,'' was rendered effectual by the

delivery of the possession of said after acquired goods to Herr & Company before the levy of plaintiff's attachment, so as to vest title in said interpleader, Herr & Company. *Phelps v. Murray*, 4 Cent. Law Jour. 583 ; *Nash v. Norment*, 5 Mo. App. 545 ; *Greeley v. Reading*, 74 Mo. 309 ; 21 Am. Law Reg. 155. (2) This mortgage was good in equity between defendants, Chrisler & Son, and interpleader, and while standing left legal title in mortgageor and equitable title in mortgagee. The taking possession of said after acquired property by mortgagee before levy of plaintiff's attachment, blended the legal and equitable title and completed and perfected same in mortgagee, the interpleader. The interpleaders' delivery bond does not estop them from claiming the goods in this suit. The interest of plaintiffs was, in no wise, prejudiced by such claim ; there was no other property of defendants to seek ; no other property upon which attachment could be levied, and the giving of said bond did not induce plaintiffs to alter their condition as to any property of defendants, or in any wise to jeopardize their claim, or to prejudice their interest. Bigelow on Estoppel, 436 ; *Dewey v. Field*, 4 Met. 381 ; *Heath v. Keys*, 35 Wis. 668.

RAY, J.— In April, 1881, plaintiff began this suit against defendants, John and A. J. Chrisler, by petition in the ordinary form, for actions on account, with affidavit and bond for attachment against the property in controversy, which consists of a certain stock of dry goods and merchandise. The attachment writ was thereafter levied by the sheriff upon the said stock of goods whilst the same was in the possession of the Herr Dry Goods Company. Said Herr Dry Goods Company gave the sheriff a forthcoming bond, as provided in section 421, Revised Statutes, and retained the possession, and by permission of the court filed its interplea in the cause, claiming the property under a chattel mortgage, exe-

cuted by the said Chrislers, and acknowledged and recorded in December, 1878, conveying to C. H. Herr & Company the said stock of goods, and other described property, to secure the payment of a certain note therein specified.

It was stipulated, on the trial, that the interpleader, the Herr Dry Goods Company, was the successor to, and had duly acquired the rights of the said C. H. Herr & Company, the mortgagee in said mortgage. The defendants, John and A. J. Chrisler, filed no answer and judgment was taken by default against them. The trial of the interplea, before the court, sitting as a jury, resulted in a finding and judgment in favor of the interpleader, from which the plaintiff has appealed. The mortgage further contained a provision purporting to convey property to be thereafter acquired, viz. : "all goods and property that may be placed in the store thereafter, at Chesapeake, by purchase or otherwise," and was otherwise valid and operative on its face. The mortgageor, it is true, was authorized by the terms of the mortgage to sell the goods in the usual course of trade, but he was also thereby required to account for and pay over the proceeds of sales to the mortgagees. Prior to the institution of the attachment suit by plaintiff, the said Chrislers, father and son, delivered to the interpleader the possession of the goods in controversy under the following agreement:

"CHESAPEAKE, Mo., March 22, 1881.

"We, John and Andrew J. Chrisler, composing the firm of John Chrisler & Son, of Chesapeake, Mo., have this day delivered full and entire possession of all our stock of merchandise, embracing dry goods, notions, groceries, hardware, clothing, hats, caps, drugs and medicines, store fixtures, show cases, scales of all kinds, and everything in our possession and in our store at Chesapeake, Mo., to W. C. Hornbeck, for Messrs. Chas. H. Herr & Co., of Springfield, Mo. *This delivery is made under the provisions* of a mortgage, executed by us to said Chas.

H. Herr & Co., dated December 12, 1878, and recorded in office of the recorder, at Mt. Vernon, Mo., December 19, 1878. This delivery also embraces the books and all unpaid accounts due the firm of Chrisler & Son.

(Signed)                                    JOHN CHRISLER,
                                            ANDREW CHRISLER."

This, we think, brings the case within the operation of the rule, heretofore declared by this court, in *Greely v. Reading*, 74 Mo. 309, and by the St. Louis court of appeals, in *Nash v. Norment*, 5 Mo. App. 545. The doctrine of these cases is, that where the mortgagee, in good faith, takes actual possession of the goods prior to the levy of the attachment, for the purpose of securing the payment of his debt, and continues to hold the actual possession up to the time of the levy, he will be protected, and will, in that event, hold the goods as against the subsequent attaching creditor, and that, under this state of facts, it is immaterial that the mortgage contains stipulations which render it void, except as between the parties.

Treating of this subject, Mr. Jones, in his work on Chattel Mortgages, says: "Delivery of possession under a mortgage, before rights have been acquired by others, will cure any invalidity there may be in the instrument, whether arising from an insufficient execution of it, the omission to record it, or from its containing a provision which makes it void, except as between the parties." Sec. 178. In this case, the debt secured by the mortgage was due and unpaid, and as the possession was delivered under said agreement some time prior to the levy of the attachment by plaintiff, the trial court, evidently, as appears from its ruling upon declarations of law asked by the parties, tried and determined the case in favor of the interpleader, in harmony with the rule supported by these authorities. Some effort is made to distinguish this case, and to take it out of the rule announced in those cases, but not, as we apprehend, upon

any solid grounds. The execution of said agreement, of March 22, 1881, and the delivery of the possession was, we think, entirely voluntary on the part of said Chrislers, father and son, and whether or not they, or either of them, supposed the sheriff could take the possession under the mortgage is not, we think, material or important. Nor do we perceive why the stipulation in said agreement, that such delivery was made under the provisions of the mortgage, should, under the facts and circumstances, vary, modify or affect the rule. The theory as to this of plaintiff's counsel is, if we understand him, that the mortgage was fraudulent *per se* and void on its face (and we may observe the trial court so declared in the first declaration given at his instance), and that the mortgage had been so treated by the parties to it as to amount to actual fraud upon other creditors, and hence, a delivery of possession thereunder would be a mere continuation of the fraud, and, therefore, ineffectual to remove or cure the vice existing in the mortgage by reason of such fraudulent and void provision. To avoid misconception, we may call attention to *Wright v. Bircher*, 72 Mo. 179 ; *France v. Thomas*, 86 Mo. 80, and *Frank v. Playter*, 73 Mo. 672, where similar mortgages, with like provisions as to after acquired property, or chattels not *in esse* at the date of the mortgage, were before this court.

A full discussion of this question and exhaustive review of the authorities were there had. It is, we think, sufficient in this case, to say that we adhere to the rule announced in those cases, which makes such mortgages inoperative to pass the legal title to property not *in esse* at the date of the mortgage, but does not go to the length now claimed, or make them fraudulent *per se*, or absolutely void without regard to the intention of the parties. Whether the mortgage became fraudulent, in fact, as to other creditors, by reason of the conduct of the mortgagees, in permitting or encouraging the mort-

gageor, after breach in the condition of the mortgage, to continue to sell without requiring the proceeds of the sales to be turned over on the mortgage was, we think, a question to be determined upon competent extrinsic evidence in that behalf. *Bullene v. Barrett*, 87 Mo. 188. The extrinsic evidence, if any, in support of this alleged fraudulent conduct of the parties was, we think, properly submitted in the declarations of law, numbered two and three, given at plaintiff's instance, and which are as follows :

"2. That if it appears from the evidence that said C. H. Herr & Co. permitted said mortgageors to remain in possession of the goods which were covered by the mortgage after said mortgageors had failed to comply with the express terms of said mortgage, and to continue to sell said goods, and all after acquired stock, in the course of trade, and without requiring said mortgageors to pay over the proceeds of such sales on said mortgage debt, then said mortgage became fraudulent in fact, as against all other creditors of the said mortgageors.

"3. That the burden of proving itself to be the owner of the goods attached, rests upon the interpleader, who is a stranger to the original suit, and unless the court believes that the said interpleader has established, by the weight of evidence, that it was, at the date of said levy, the real owner of said goods in good faith, the issues should be found against said interpleader."

The finding of the court, sitting as a jury, in favor of the interpleader must, therefore, have been adverse to the plaintiff, on the facts relied on, as showing actual fraud in this behalf. In *Greely v. Reading*, cited *supra*, it will be observed the mortgage was void, under the statute, as being a conveyance to the grantor's own use, and the agreement between the mortgage debtor and mortgagee was, that the latter should take the possession and hold the same until his debt was paid, which was the same in legal effect as an agreement to hold according to

the terms of his mortgage, which would be satisfied and discharged by the payment of the debt.   For these reasons, therefore, we think, the positions of counsel for plaintiff are not, in these respects, well taken.

The remaining question, not covered by the discussion already had, and insisted on by plaintiff, is, that the interpleader is estopped from denying that the goods were the property of the defendant by reason of having given the forthcoming bond to the sheriff.   We do not think we should so hold in a case of this sort.   The recital in the delivery bond pertinent to this inquiry is, that the obligors stand indebted to the sheriff in the sum named, upon condition that they shall have the property found in their possession, and attached by virtue of the writ against the said Chrislers, forthcoming when and where the circuit court shall direct.   There has been no breach of this bond, nor is this a suit by the officer thereon.   By the levy of the writ, the officer ordinarily acquires the possession and a special interest, or lien, on the property.   It may be that, by giving the delivery bond or "receipt," as occurs in some of the cases, for the goods, and thereby inducing the officer to part with his possession, or to forbear taking and holding the actual possession, the obligor, or receiptor, would, in an action by the officer on such bond, or receipt, for failure to deliver the property, be estopped or precluded upon grounds of public policy, or otherwise, to set up, afterwards, his title or ownership to defeat the action. Such a course is, under many authorities, held to be a fraud on the officer, and on the law.   As to this, however, the authorities are not entirely harmonious, and as that question is not now directly presented, we do not pass on, but waive it.   The cases to which we have been referred, are, for the most part, actions of this sort by the officers for failure to deliver to them the goods seized, but released on bonds or receipts.   *Bursley v.*

*Hamilton*, 15 Pick. 40; *Delzell v. Odell*, 3 Hill [N. Y.] 215; *Dewey v. Field*, 4 Met. [Mass.] 381.

There are other cases where the parties have been precluded, upon the doctrine of estoppel, from setting up title in themselves to the property, as where, for instance, a party informed of the facts relating to his own title, gives the attaching officer a receipt for property, promising to deliver, on demand, without any notice that he claimed to own it, and it appeared that when the attachment was levied, or the receipt given, there was other property of the debtor, which the officer could have attached if the party had then set up his claim. Bigelow on Estoppel, 437, and cases cited in note 2. But the receipt does not, in these cases, in and of itself, create the estoppel, which depends upon the accompanying conduct and silence of the receiptor, and the consequent injury and loss of his debt, which the attachment creditor thereby suffers. The case before us does not possess these features, and is wanting in the essential elements of estoppel. The *onus* is on the party who sets up the estoppel to make out the facts on which it rests. It is not claimed, or, if claimed, not shown, that plaintiff has been misled or injured by the action of the interpleader in giving said bond, or that plaintiff, or said officer, was thereby induced to believe that the interpleader was waiving, and not interposing, or asserting a claim to the property in its own behalf; or that, in consequence of this course on the part of said interpleader, the plaintiff was prevented from further search for other property of his debtor, or that he failed, for this reason, to find other property, or was, for this reason, injured and prevented from collecting his debt. None of these matters appear from extrinsic evidence, or from the face of the bond, or by any necessary inference which can be drawn in this behalf.

Moreover, it appears, we think, necessarily, that at the time of the levy, the interpleader was, as plaintiff

and the officer must have known, asserting its ownership and claim on the goods. The mortgage was of record in that county, and had been for several years, and the interpleader was in the actual possession of the property when seized by the officer. The fact of actual possession on the part of the interpleader, which is not only in itself a claim of ownership, but, as to such personal property, presumptive evidence of title, appears on the face of the bond itself. In the absence of evidence to show that plaintiff has been deceived, or induced, in some way injurious or prejudicial to him, to alter his position with reference to the property of his debtor in the writ, in consequence of the execution of the delivery bond, we see no good reason why the mere giving of the bond, which is done simply to retain the possession, should, as against such a plaintiff, be held an admission of ownership in the defendant in the attachment writ, or should, of itself, preclude the interpleader, upon a trial between him and the attaching creditor, from asserting his title and ownership of the goods covered by the bond.

These views, if correct, and under the authorities cited we have no doubt of their correctness, leads to an affirmance of the judgment of the trial court, and it is accordingly so ordered. All concur, except Brace, J., absent.