ANNA P. HALDERMAN, Respondent, v. W. S. STILLINGTON, Appellant.

Kansas City Court of Appeals, November 4, 1895.

1. Fraudulent Conveyances: DELIVERY: BAILEE: NOTICE. Upon a sale, the change must be open and visible and made within a reasonable time; and where the property is in the hands of a bailee, notice by the vendor to the bailee is sufficient transfer of possession under the statute; and the consent of the bailee to become bailee of the vendee is unnecessary.

2. ———: SALES: QUITCLAIM DEED. A quitclaim deed of personal property acknowledged and recorded is no more than an ordinary bill of sale; and the evidence in this case is hardly sufficient to warrant its submission to the jury on the theory of an equitable mortgage.

Halderman v. Stillington.

3. ———: EQUITABLE MORTGAGE: POSSESSION. Though the instrument under which plaintiff claims in this case were an equitable mortgage and void between the parties, yet plaintiff's possession for the purpose of securing her debt would be protected as against levying creditors.

4. Instruction: UNDISPUTED FACT. An instruction assuming an undisputed fact is not the subject of criticism therefor.

5. ———: BURDEN OF PROOF: FRAUD. An instruction casting the burden of proof upon a petitioner impeaching a sale for fraud, is proper.

6. Fraudulent Conveyances: POSSESSION WITH INTEREST: REPLEVIN. If plaintiff was in possession under an equitable mortgage, she was more than a mere depositary, as her possession was coupled with an interest, and she could maintain replevin; and, whether mortgagee or absolute owner, is immaterial.

7. Instructions: COMMENT ON EVIDENCE. An instruction which was a mere comment on a specified part of the evidence, was properly refused in this case.

8. Jury: VERDICT: REMITTITUR. Since the case was fairly submitted to the jury on evidence and instructions, the finding will not be disturbed in this case, though their verdict for $2,500 damages was not authorized by the evidence, as it was cured by *remittitur* in the trial court.

*Appeal from the Jackson Circuit Court.*—HON. ED. L. SCARRITT, Judge.

AFFIRMED.

*Chase & Bartlett* and *Shelley Grover* for appellant.

(1) Change of possession in case of sale of personal property must take place within a reasonable time; what is a reasonable time is generally a question for the jury. *Franklin v. Gummersell*, 11 Mo. App. 306; *State to use v. Hellman*, 20 Mo. App. 304; *Link v. Harrington*, 41 Mo. App. 635; *How v. Taylor*, 52 Mo. 592. (2) When an action of replevin is predicated on ownership and proof shows the plaintiff is a mortgagee, there is a fatal variance amounting to failure of proof; and such variance and error can not be remedied by amend-

ment. *Silsby v. Aldridge*, 1 Wash. 117; *Kern v. Wilson*, 73 Iowa, 490; *Reynolds v. Copeland*, 71 Ind. 422; *Eakin v. Eakin*, 63 Ill. 160; *Weil v. Posten*, 77 Mo. 284; *Crowe v. Peters*, 63 Mo. 429; *Burnett v. Timberlake*, 57 Mo. 499; *Hickman v. Dill*, 32 Mo. App. 509, 517. (3) The court erred in giving instruction numbered 2 at plaintiff's request. It improperly assumes possession to have been changed from Wilson to Mrs. Halderman. *Bergert v. Borchert*, 59 Mo. 80, 84, iv. It is also misleading. (4) The court erred in giving instruction number 3, at plaintiff's request. It was misleading. *Bergert v. Borchert*, 59 Mo. 80, 83, 84. It assumed possession to have been in Mrs. Halderman after the alleged execution of the quitclaim deed. *Bergert v. Borchert, supra.* (5) The court erred in refusing to give instruction numbered 5 requested by defendant. *Silsby v. Aldridge, supra; Eakin v. Eakin, supra; Reynolds v. Copeland, supra.*

*Cook & Gossett* for respondent.

(1) Actual change of possession of personal property is not necessary where the property at time of sale is in possession of a third person, and such person is notified, and this whether such person consents to hold for the vendee or not. *Worley ex rel. v. Watson*, 22 Mo. App. 546; *Howe v. Taylor*, 52 Mo. 592. (2) Respondent was in the actual possesion of the property at time of the levy, and this notification to the warehouseman, as to some of the goods, and to Mrs. Moore, custodian, as to the other part, at any time before levy by appellant was sufficient. The case of *Link v. Harrington*, 41 Mo. App. 635, and others of its class, are overruled. *McIntosh v. Smiley*, 107 Mo. 377; *Markey v. Umstattd*, 53 Mo. App. 20. (3) Even though the transfer or instrument shown in evidence had been void in

law as to creditors, in absence of fraud in fact, it was purged by the change of possession. *Greely v. Reading*, 74 Mo. 309; *Dobyns v. Meyer*, 95 Mo. 132; *Petring v. Chrysler*, 90 Mo. 649; *McIntosh v. Smiley, supra.* (4) In this state the question is well settled that a mortgagee in possession may maintain replevin as owner, and whether the respondent was owner or mortgagee was immaterial. *State ex rel. v. Bell*, 2 Mo. App. 102; *Hansman v. Hope*, 20 Mo. App. 193; *Pyeatt v. Powell*, 2 C. C. A. 200. (5) As to the instructions, the instructions given at plaintiff's request fairly present the law and are correct.

SMITH, P. J.—This is an action of replevin. In the year 1889, the plaintiff, whose residence was Leavenworth, Kansas, loaned to her son-in-law, E. E. Wilson, then a resident of Kansas City, in this state, something over the sum of $10,000, taking from him two promissory notes for the amount. In September, 1890, Wilson quit housekeeping and stored his books, furniture and other household goods in Kansas City. The books and bookcases he stored at Foster's storage warehouse. The other furniture and household goods were stored in the Emmons building. Both lots were stored in Wilson's name.

On December 1, 1890, after the maturity of said notes and after the said Wilson had become insolvent, he wrote and signed a quitclaim deed to plaintiff for the property so stored. The deed was acknowledged January 19, 1891, and filed for record in the recorder's office two days later. Some time after the deed had been recorded, it was delivered to plaintiff by Wilson. It appears that this was the first time that plaintiff was apprised of the execution of the deed, although she testified that she had previously told Wilson that she thought it was his duty to give her some security for

the notes, and that she wished he would do so. The consideration mentioned in the deed was $10,000. It does not appear that plaintiff either entered a credit on the notes, or either of them, for this amount. Plaintiff further testified that when Wilson delivered her the deed he told her that he had left the keys where the goods were stored, with Ada Moore, and that she would take good care of them for her. She further testified that she wrote to Foster, the warehouseman, to know if the books were there and to keep them, and Mr. Thompson, the latter's successor in business, answered that he had the goods stored and would allow no one to get them without an order from her.

It appears from the testimony of the witness, Ada Moore, who was a servant in the family of Wilson, that, under the directions of the latter, she packed and stored the property in controversy in his name. The furniture and other household goods she stored in a room in the Emmons building, retaining, under Wilson's direction, the keys to the room. Later on, she was informed by Wilson that all the property stored belonged to plaintiff and was by him directed to keep the keys for plaintiff. The books and bookcases, under Wilson's directions, she stored in the warehouse of Mr. Foster, but did not then take a warehouse receipt for same, but six months thereafter, on being informed that the property stored was that of the plaintiff, she went to Foster and got from him a warehouse receipt in plaintiff's name, for the articles stored in his warehouse. According to the testimony of this witness, she was advised by both plaintiff and Wilson that plaintiff had become the owner of the stored property long before the levy of the execution took place.

Foster, the warehouseman, testified that the books and bookcases were stored in his warehouse on September 24, 1890, in the name of Wilson. He further testi-

fied that he gave no receipt for the goods when stored, nor afterward, to the witness Ada Moore.

Piercy Thompson testified that in September, 1891, Foster sold him the former's warehouse business, and that the books and bookcases, stored in the name of Wilson, came to him in that way.

It appears that plaintiff, on February 27, 1891, wrote a letter to Foster, inquiring the amount due on the storage of the books and bookcases and asking him to secure her of their safe-keeping until further orders from her. But it does not appear that this letter was received or answered until about a year later.

It further appears that on April 13, 1892, plaintiff by letter authorized Thompson to issue a warehouse receipt to Wilson for the books and bookcases. Wilson, after getting the warehouse receipt, mortgaged the books and bookcases to secure a loan of $500, which amount he failed to pay at maturity, and the property was subsequently sold under the mortgage.

The sheriff made the levy on all of the property in dispute on July 21, 1891, on which day this suit was brought. There was a trial and judgment for plaintiff, and defendant has appealed.

The defendant objects that the court erred in giving the first instruction for the plaintiff, which declared to the jury that if they found from the evidence that Edwin Wilson was indebted to plaintiff on the notes introduced in evidence, and that to secure or partly pay the same, he executed the instrument of transfer, or conveyance of the property in question, offered in evidence, and that at said time the said property was in the custody and charge of a third person, and that before the levy of the execution such third person was notified that such property belonged to plaintiff and consented to holding the same for her, then they should find for plaintiff, unless they find that such transfer was

made with intent on the part of the plaintiff to hinder, delay or defraud creditors of said Wilson, under the other instructions given them.

Section 2505, Revised Statutes, provides that every sale made by a vendor of goods and chattels in his possession, or under his control, unless the same be accompanied by a delivery in a reasonable time, regard being had to the situation of the property, and be followed by an actual and continued change of the possession of the things sold, shall be held fraudulent and void, as against the creditors of the vendor. This section has been so often construed by the supervisory courts of this state, that there is no ground for misunderstanding its import. There must be an actual delivery—a substantial change of the possession. No symbolical delivery will do as against third parties. The change of possession must be open and visible, such as to apprise the public, or those dealing with the vendor, that the property has changed hands and the title passed from the vendor to the vendee. The change, too, must be continuous—at least, long enough to meet the spirit and object of the statute. *Claflin v. Rosenberg*, 42 Mo. 439; *Bergert v. Borchert*, 59 Mo. 80; *Wright v. McCormick*, 67 Mo. 426; *Stewart v. Bertstrom*, 79 Mo. 524; *State v. Hall*, 45 Mo. App. 298; *Knoop v. Distilling Co.*, 26 Mo. App. 303; *Herman v. Morris*, 28 Mo. App. 326; *State v. Donnelly*, 9 Mo. App. 519.

And where the property is in the hands of a bailee, a notification by the vendor to the bailee that the property has been sold, or that it is that of the vendee, is a sufficient transfer of the possession to satisfy the statute of fraudulent conveyances. *How v. Taylor*, 52 Mo. 592; *Linton v. Butz*, 7 Barr, 89; *Tierce v. Chipman*, 8 Ver. 334; *Butts v. Caldwell*, 4 Bibb, 458; *Harman v. Anderson*, 2 Camp. 243.

According to the last above cited cases, it is not required that the bailee should consent or agree to be bailee of the vendee, but all that is necessary is that he should be notified of the transfer of the goods and he thereby becomes bailee of the vendee.

It will be observed the instruction which has been quoted told the jury that if the bailee, before the levy of the execution, was notified that the property belonged to the plaintiff, that was sufficient. This was, in effect, telling the jury that if the bailee was notified, at any time before the levy, this was sufficient as against the creditors of the vendor. The law is now well settled in this state that a *bona fide* sale of goods and chattels, the possession of which is not taken within a reasonable time after the sale, within the meaning of section 2505 Revised Statutes, is not void as to existing creditors at the time of the sale, *if before the institution of the attachment or levy under the execution by the creditors, the vendee takes and retains actual and continuous possession of the property and remains in possession thereof at the time of the levy of the writ upon the property.* McIntosh v. Smiley, 32 Mo. App. 125; s. c., 107 Mo. 377; *Dobyns v. Meyer,* 95 Mo. 132; *Petring v. Chrysler,* 90 Mo. 653; *Marky v Umstattd,* 53 Mo. App. 20. So that said instruction is unobjectionable in its enunciation in this regard.

We do not think the conveyance, which is the plaintiff's muniment of title to the property in controversy, is more than an ordinary bill of sale of personal property. It acquired no additional force or validity by being acknowledged and recorded. The evidence is hardly, if at all, sufficient to warrant the submission of the case to the jury on the theory of an equitable mortgage. It is true that some loose expressions contained in the testimony of the plaintiff give some slight countenance to that idea, but when it is all duly

considered it will be seen that the plaintiff's claim of title is based wholly on the bill of sale and nothing more.

But if defendant contends that the instrument under which plaintiff claims was an equitable mortgage, and void except as between the parties, yet, if the plaintiff at the time of the levy, was in actual possession, for the purpose of securing her debt, she would, in the absence of fraud in fact, be protected as against the levying creditors. *Petring v. Chrysler, supra; Dobyns v. Meyer, supra; Greely v. Reading*, 74 Mo. 309. We can therefore discover no harmful error in the action of the court in giving plaintiff's first instruction.

It was not disputed that under the writ in this suit the plaintiff was placed in possession of the property in controversy and therefore the plaintiff's second instruction, which assumed that fact, was not justly subject to the defendant's criticism.

The defendant objects that the plaintiff's third instruction, which informed the jury that the burden of proving fraud, or intent on the part of the plaintiff to hinder or delay or defraud the creditors of Wilson, by receiving the property in question from him, was upon the defendant. The defendant sought to impeach the integrity of the transaction of the sale of the goods by Wilson to plaintiff, on the ground of fraud in fact, and the burden of accomplishing this, of course, rested on him.

It is not perceived that the refusal to give defendant's fifth instruction was error. Even if the plaintiff had been in the possession of the property under an equitable mortgage, she was not a mere depositary. Her possession was coupled with an interest. Creditors could not interfere with her possession without first satisfying her mortgage debts. Whether the plaintiff was mortgagee or absolute owner was of no conse-

quence, since, under the statutory allegation, she could maintain replevin for the property, whether she held it the one way or the other. *Hausman v. Hope*, 20 Mo. App. 193; *State v. Bell*, 2 Mo. App. 102; *McCandless v. Moore*, 50 Mo. 511; *Frisbee v. Langworthy*, 11 Wis. 375.

We do not discover any error in the action of the court in declining to give the defendant's sixth instruction. It was no more than a mere commentary upon specified parts of the evidence. The jury had already been directed to consider all the evidence, which included that specified.

Upon the issue of fraud in fact, the case was fairly submitted to the jury on the evidence and instructions. Neither in the admission nor rejection of evidence, nor in the giving or refusing of instructions, have we been able to discover any error materially affecting the merits. The verdict for $25 damages was not authorized by the evidence and was therefore erroneous; but this error was cured by the *remittitur* entered by the plaintiff in the trial court, but notwithstanding this we can not say in the face of the evidence that the finding of the jury on the question of damages was evidence of bias, prejudice or passion, or that, in considering the other facts, they misapprehended the evidence and instructions. We think there was ample evidence to support the verdict of the jury in respect to the ownership of the property.

It follows that the judgment of the circuit court must be affirmed. All concur.